**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **DR. KIMBERLY R. BAKER** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 2:2024-cv-_____ |
| ) | **DEMAND FOR JURY TRIAL** |
| **ALABAMA STATE UNIVERSITY,** ) | |
| **Defendants.** ) | |

## AMENDED COMPLAINT

**COMES NOW**, Plaintiff, Dr. Kimberly R. Baker, by and through undersigned counsel, and for want of prosecution, files this AMENDED COMPLAINT in the above-styled cause against her employer, Alabama State University, (hereinafter referred to as "ASU") pursuant to the laws of the United States of America, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. as amended by the Civil Rights Act of 1991 alleging employment discrimination.

## NATURE OF THIS ACTION

1. This is an action seeking redress from unlawful employment practices by the defendant that have resulted in deprivation of rights, secured and guaranteed unto the plaintiff by the laws of the United States of America. The plaintiff seeks declaratory judgment and injunctive relief, compensatory damages, back pay and any further relief or employment benefits to which she proves that she is justly entitled from the defendant as direct and proximate violation of her rights guaranteed to her under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* as amended. The plaintiff seeks equitable and injunctive relief declaring the rights and relations of the parties as follows:

   (a) That the actions of the defendant against the plaintiff regarding the terms and conditions of her employment and the employment practices of ASU contravene rights

secured her by the laws of the United States of America. More specifically, the plaintiff alleges that while she was employed with ASU, she was the victim of unlawful employment discrimination and retaliation for having complained of race. The plaintiff seeks equitable and injunctive relief for the unlawful practices committed by the defendant against her, damages, back pay, plus a reasonable award of attorney fee and litigation costs, pursuant to Title 42 U.S.C. §1988, including, but not limited to, compensatory and liquidated damages.

## JURISDICTION AND VENUE

2. Subject Matter Jurisdiction of this court is invoked pursuant to, and in accordance with, the provisions of Title 28 U.S.C. §§ 1331 and 1343 (3), this being an action to redress deprivation of rights secured unto the plaintiff pursuant to the laws and Constitution of the United States of America, namely Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000(e) prohibiting race-based employment discrimination. The Court has Personal Jurisdiction of the parties to this action.

3. Venue is appropriate pursuant to Title 28 U.S. C. § 1391(b).

## ADMINISTRATIVE PROCEDURES

4. Within 180 days of learning of the acts of discrimination of which plaintiff complains, she filed a Charge of Discrimination with the Birmingham District Office of the United States Equal Employment Opportunity Commission, ("EEOC"), alleging violations by the defendant of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended. The plaintiff has been issued notice of right to sue entitling her to institute a civil action in a court of competent jurisdiction, pursuant to which she has brought this action.

## *PLAINTIFF'S FACTUAL ALLEGATIONS*

5. The plaintiff avers that she is over the age of nineteen (19) years. All actions complained of herein by the plaintiff against the defendants occurred in Montgomery County, Alabama. At all times material hereto, there existed an employer-employee relationship between the plaintiff and ASU. The plaintiff avers that she is white female at an HBCU (Historically Black College and University), ASU, employed in the capacity of a Professor of Journalism in the Department of Communications, College of Liberal Arts and Social Sciences. She is the longest serving faculty member in the Department. The plaintiff avers that she is a minority within the work environment and administration of ASU, which is predominantly made up of black males in supervisory and upper-level administrative positions. The plaintiff aver that she is also the victim of discrimination relative to black female co-employee, namely Dr. Byrd whereas ASU's own Fall 2024 study shows a current $4,161 difference annually as compared to what Dr. Bryd is compensated and further that she was paid less as Interim Chair of the Department of Communications than Dr. Byrd who was at a lower rank of Associate Professor during her time as Chair (a difference of $18,100 annually).

6. Defendant Alabama State University, (ASU) is a duly organized public institution of higher education and exists pursuant to the laws of the State of Alabama to administer public education. Plaintiff avers that upon information and belief, at all times material hereto, there is a Board of Trustees for ASU, charged with exclusive jurisdiction, supervision and control of the University pursuant to *Alabama Code 1975*, Section 16-50-24. Plaintiff further avers that at all times material hereto Quinton T. Ross, Jr., Ed.D. serves as President of ASU and that Derrick L. Carr is the University's Assistant Vice President of Human Resources. Dr. Carr investigated the plaintiff's allegations of Dr. William Robinson having made racial and gender remarks towards white women, specifically direct

statements made to the plaintiff, on or about September 26, 2023. Plaintiff avers that Dr. Carr represented that from his investigation, his findings are that the allegations have been found to be true. Dr. Carr represented that the President of ASU, Dr. Quinton T. Ross, Jr. has recommended disciplinary action against Dr. Robinson for his racial and gender discriminatory disparaging actions towards the plaintiff.  Plaintiff avers that the actions of Dr. Robinson, as her immediate Supervisor subjected her to employment discrimination on the basis of her race and gender and proximately caused her to suffer a hostile work environment.  After she complained of racial and gender disparaging discriminatory animus, she was subjected to retaliation by Dr. Robinson.

7. ASU has been authorized by state law of Alabama to be an institution of higher education to provide formal education, including but not limited to collegiate and professional or any other form of education, above the secondary school level.

8. Plaintiff avers that at all times material hereto, she has been employed with ASU for twenty (20) plus years and as the filing of this lawsuit, she remains employed in the capacity of a full-time Professor of Journalism in the Department of Communications, College of Liberal Arts and Social Sciences.  Plaintiff avers that she has been the subject of adverse employment action by ASU whereas the evidence will show that ASU's own documentation (for example, salary comparison study completed in the Fall 2024 by Human Resources, salary computation sheets and emails, stating vast differences in char pay),  confirms that the plaintiff current and historically unequal pay for the same duties and same faculty rank  of others spanning her twenty (20) years of employment.  The plaintiff avers that ASU's own Fall 2024 study shows a current $4,161 difference annually as compared to what Dr. Bryd is compensated and further that she was paid less as Interim Chair of the Department of Communications than Dr. Byrd who was at a lower rank of Associate Professor during her time as Chair (a difference of $18,100 annually).

Dr. Byrd was paid $109,788, her first year as Chair of the Department at a rank of Associate Professor whereas Dr. Baker was offered, as a full professor, to be Chair, $103,680.  Plaintiff avers that the disparity is pay is disparate treatment and that her pay should have been approximately $18,100 more than the prior Chair's starting pay, which equals $12,780. Plaintiff avers that whereas she and Dr, Byrd were awarded full professorship at the same time, Fall 2020, they were not paid the same. Further, the same study shows a $5,194 difference annually as compared to the other departmental faculty member at the same level, Dr. Morrison.

      9.  Plaintiff avers that in 1978, an employee of ASU named Charles Craig brought a civil rights class action against ASU alleging a pattern and practice of discrimination against Caucasian employees with respect to hiring of administrative, teaching, clerical, and support staff and with respect to promotion and tenure decisions for such staff. *See Craig v. Ala. State Univ.*, 451 F. Supp.1207 (M.D. Ala. 1978), *aff'd without opinion,* 614 F.2d 1295 (5th Cir. 1980). Judge Johnson determined that class certification was indeed appropriate and defined a broad class of past, present, and future Caucasian employees of ASU, past and future Caucasian applicants for positions at ASU, and Caucasian persons who would have applied for employment at ASU. 451 F. Supp. at 1208 n.1. After a trial on the merits, Judge Johnson found in favor of the plaintiffs and concluded that "in the hiring of its administrative, teaching, and clerical and support staff and the promotion and tenure of its faculty, ASU ha[d], as alleged by plaintiffs, engaged in a pattern and practice of discrimination against whites." *Id.* at 1208.  Plaintiff avers that Judge Johnson's finding in this case apparently culminated in entry of an injunction forbidding any further discrimination at ASU in all aspects of hiring practices. *See Craig v. Ala. State Univ.*, 804 F.2d 682 (11th Cir. 1986), (In 1983, a Caucasian female named Dorothy Moore ("Moore") approached ASU's President in search of a position at ASU. 804 F.2d at 682. Moore was told nothing was available at that time but that if grant funds

could be obtained, she could be employed on a temporary basis. *Id.* Later in the year, ASU hired Moore as Assistant Director of University Relations. *Id.* ASU gave Moore two contracts: one from July to September of 1983 and the other from October of 1983 to September of 1984. *Id.* Moore understood that while the President could fill the position on an interim basis the opening would have to be advertised before it could be filled on a permanent basis. *Id.* The Board of Trustees met in August of 1983 and discussed Moore's first contract, but not her second contract. *Id.* After the Board meeting, the President of ASU told Moore that only her first contract would be honored, but that she could apply when the position was advertised. *Id.* at 683-84. ASU advertised the position. *Id.* at 684. Jacqueline Williams ("Williams"), a long time ASU employee, who had been taking study leave to pursue a degree notified ASU that she wished to be considered for re-employment. *Id.* At its September 1983 meeting, which was convened for nearly a week before the advertised closing date for the application period for the position of Director of Federal Relations, the Board of Trustees voted to hire Williams as Director of Federal Relations. *Id.* When Moore responded to the advertisement for that position a few days later, she learned that it had been given to Williams. *Id.* Moore filed a Motion for Contempt in the *Craig* case, alleging that her application had been rejected because of her race in violation of the 1978 injunction prohibiting discriminatory employment practices at ASU. *Id.* at 682. At the district court level, Moore was initially unsuccessful, but the Eleventh Circuit reversed the district court's finding in favor of ASU and remanded the case for a determination of proper relief. *Id.* at 691.

10. The plaintiff avers that since Craig, there has been other white employees who have complained of ASU perpetuating its history of discriminating against Caucasian employees, among them Dr. Steven Chesbro, former Dean of the College of Health Sciences, John Garland and Rich

Emmanuel.  Plaintiff further avers that ASU has other litigation, for example that brought by prospective white employees alleging race discrimination for position sought, among them *Gayle Gear v. ASU*, 2:09-cv-970-MFM-TFM, United States District Court for the Middle District of Alabama.

11. The plaintiff avers that the relevance of the foregoing with respect to her complaint in this cause is that she believes that the evidence will show that ASU as an institution has systemic reverse discrimination.  Specifically, her narrative articulates the factual basis in support thereof and the university's investigation and findings support her allegations.   Plaintiff furthers avers that the adverse retaliatory actions of which she complains herein are consistent with the defendants' perpetual history of reverse discrimination.

12. Plaintiff avers that she has been the victim of employment discrimination by racial animus and disparaging gender remarks by her supervisor Dr. William Robinson.

13. Plaintiff avers that the actions of Dr. Robinson against her created a hostile work environment.

14. Plaintiff avers that Dr. Robinson was hired despite not meeting the minimum requirements of a Chair being at least an associate professor. Dr. Robinson was given promotion and tenure, which is extremely rare, and especially concerning is that he had been denied tenure and promotion at his previous university. Dr. Robinson was hired and given promotion and tenure upon his hire date instead of being required to adhere to the ASU Faculty Handbook.  Dr. Baker, by comparison was required to earn her promotion and tenure in accordance with the ASU Faculty Handbook and through a rigorous process spanning years.

15. Plaintiff avers that she was subjected to discrimination and disparate treatment when in the Spring 2021 she relayed to her supervisor, Dr. Alcime, that she had a health issue that

potentially would affect her ability to be on campus at times after February, that she was being treated out of state. The Char and Dean made the decision to change an in-person course before any students had enrolled online. The change having been made, the Provost, Dr. Pettis, told the Dean to change it back and that if the plaintiff, Dr. Baker, could not perform her duties she should take FMLA. The plaintiff contends that by comparison, Dr. William Robinson, without any documentation, was granted permission to perform all duties remotely from another state, including two overload classes. Dr. Robinson was afforded extensive accommodations.

## FIRST FEDERAL CAUSE OF ACTION

### *Employment Discrimination: Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. '2000e, et seq..*

16. Plaintiff avers that she has been discriminated against by her employer, ASU, in violation of Title VII of the Civil Rights Act of 1964, as amended. The plaintiff alleges disparate treatment by the defendant has adversely affected the terms and conditions of the plaintiff's employment in violation of applicable law.

17. The plaintiff avers that she has been caused to suffer embarrassment, humiliation, mental distress, emotional anguish, economic and non-economic damages as a direct and proximate cause of the defendant's discriminatory and unlawful conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended.

## PRAYER FOR RELIEF

Plaintiff demands compensatory damages, back pay, other back employment benefits, attorney fees, litigations costs and expenses and any other relief to which plaintiff may show that she is justly entitled as determined by this court pursuant to applicable law, including, but not limited to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and

Title 42 U.S.C. § 1988.

**Pursuant to Rule 11, Federal Rules of Civil Procedure, the plaintiff files her amended complaint.**

Respectfully submitted,
*/s/ Amardo Wesley Pitters*_____
**Amardo Wesley Pitters, Esquire**
**Attorney for the Plaintiff**
**Alabama State Bar: 8998-T64A**

**OF COUNSEL:**

*LAW OFFICES OF 2A. WESLEY PITTERS, P.C.*
**1145 South Perry Street**
**Post Office Box 1973**
**Montgomery, Alabama 36102**
**Telephone: (334) 265-3333**
**Telecopier: (334) 265-3411**
**Email: awpitters@pitterslawfirm.com**

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**